**Delmont Vernon CARLSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 8633.**

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1966.

John W. Jordan, of Zacharias, Hiebsch, Render & Kamas, Wichita, Kan., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty., Topeka, Kan. (Newell A. George, U. S. Atty., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

Appellant Carlson was convicted in the United States District Court for the District of Kansas for failure to report for civilian work, in violation of the Universal Military Training and Service Act, 50 U.S.C.App. § 462. He appeals from a two year prison sentence imposed thereon.

At the age of 18, Carlson registered with Local Board No. 8 in El Dorado, Kansas, on April 19, 1957. As a member of the Jehovah's Witnesses, Carlson indicated his conscientious objection to military service and accordingly, on March 26, 1959, he was given a 1–0 classification, which subjected him to call for assignment of civilian work contributing to the maintenance of the national health, safety and interest. Thereafter Carlson requested reclassification to 3–A (hardship-dependency) status. The Local Board considered the application, and on March 21, 1962, advised Carlson that a change in his classification was not warranted. Meanwhile, Carlson had undergone a physical examination and was found acceptable to perform civilian work. After affording Carlson the opportunity to indicate certain work preferences, the local board informed him that he would be given until May 1, 1962 to arrange his affairs in preparation for his civilian assignment. He was thereafter ordered to report for civilian work at the Kansas University Medical Center at Kansas City, Kansas. The record indicates that he failed to appear; however, because of a procedural defect the order was subsequently vacated. On June 14, 1963, the Local Board mailed Carlson a Dependency Questionnaire which he completed and returned. The Local Board considered the questionnaire and, without reopening the prior classification, again refused to reclassify Carlson from 1–0 to 3–A. By letter of July 29, 1963, Carlson was instructed to file within 10 days his preference in regard to civilian work at Kansas University Medical Center. He did not reply. The Local Board then decided it was necessary to have an "interim conference" with Carlson and a representative of the State Selective Service Director, pursuant to § 1660.20 (c) of the Selective Service Regulations. The meeting was for the purpose of offering assistance in reaching an agreement as to the type of civilian work that Carlson would be willing to perform in lieu of induction into the armed forces. Carlson was advised to present himself for the meeting to be held October 15, 1963, at 11:00 A.M. He did not appear at the Local Board office at the appointed hour. However, around noon a letter signed by Carlson was found on the premises. It stated, in substance, that he had found the door locked; that in attempting to conclude his financial affairs in order to comply with the Selective Service program he had suffered considerable loss; that he wished "to have no part of your program"; and that any mail should be sent to him c/o 2121 Bedford, Wichita, Kansas.[1] When Carlson did not appear at

---

1. The letter also stated: "So, what you decide let me know by mail so that I can be there to report for trial. I know I—I just as well get it over with unless you decide to cancel my work order permanent. * * *"

In connection with his failure to report, Carlson testified:

"Q. Then what did you mean when you said in your letter, 'I wish to have no part of your program.' Now, what program were you speaking of? A. I was speaking of the program of going to K.U. Medical Center after I had been traded around like I'd been and after I'd lost everything and then they wanted me to—after I sold everything and they didn't have me report and a lapse of a period of almost ten months—I mean, after I lost everything, what was the point?

Q. So, because of your bitterness you didn't want to have anything to do with going to work for the—for civilian work or anything after that? A. More or less, that is correct. * * *"

the meeting, the Local Board proceeded to determine that hospital work at Kansas University Center was appropriate and requested permission to order him to report there. The Director of Selective Service gave the board the requested authorization, and on October 30, 1963, the Order to Report for Civilian Work was mailed to Carlson at his last known address, 2121 Bedford, Wichita, Kansas, ordering him to report to the Local Board at 8:00 A.M. on November 12, 1963. Carlson failed to report as ordered, and the indictment, trial, and conviction followed.[2]

Carlson contends that the civilian work order was invalid in that the Local Board's refusal to reclassify him as 3–A was unreasonable and factually baseless. In support of his request, Carlson stated that he was providing support in the amount of $100 per month for his father, 78 years of age, whose annual income amounted to $780 in Social Security benefits. Carlson asserts that he thus established a prima facie case for the desired 3–A classification and that the Local Board's denial of his request was totally unsupported.

It is, of course, well established that federal courts may not sit as "super draft boards" and substitute their judgment on the weight of the evidence for that of designated local boards. Nor should they look for substantial evidence to support such determinations. The judicial inquiry is limited to determining whether there is a factual basis for the classification. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; United States v. Capson, 10 Cir., 347 F.2d 959, cert. denied 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163; Fleming v. United States, 10 Cir., 344 F.2d 912.

The hardship-dependency classification applies only to those persons "whose induction into the armed forces would result in extreme hardship * * *." 32 C.F.R. 1622.30(b). A selective service registrant claiming such an exemption has the burden of clearly establishing his right thereto. Fleming v. United States, supra. The Dependency Questionnaire showed that Carlson had adult brothers and a sister. He declined to complete that section of the questionnaire which would have reflected his financial condition. He tendered no statements or affidavits from other individuals in support of his request. In these circumstances, we cannot say that the Local Board's refusal to reclassify Carlson had no basis in fact or that its disposition of the case was procedurally arbitrary. See, 32 C.F.R. 1625.4.

Affirmed.

---

2. Carlson contended at his trial that he never received the order and that his failure to report was therefore not willful.

However, the jury determined this issue of fact adversely to him, and the point is not raised on appeal.